IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>ROY LEE ROBERTS, JR.,<br><br>*Defendant.* | Case No: 21-CR-00180-DCJ |

**GOVERNMENT'S FIRST MOTION *IN LIMINE***

**COMES NOW** the United States of America, by and through Christopher J. Wilson, Acting United States Attorney for the Eastern District of Oklahoma, and Edith A. Singer, Assistant United States Attorney, and respectfully moves the Court *in limine*, for the admission of statements made in 2019 by then seven-year-old R.R. to Tracy VanKooten, a forensic interviewer, in which he articulated sexual abuse inflicted upon him by the defendant.

I.  **BACKGROUND**

Between November 19, 2017 and September 4, 2019, R.R. stayed for a period of time in his grandfather's home with the Defendant, his biological father, in Krebs, Pittsburg County, Oklahoma. R.R. has recounted events to Tracy VanKooten that occurred in that home after his mother was killed in a crash and before he and his siblings were discovered in a car and removed from their father's care in Oklahoma City.

On October 30, 2019, Tracy VanKooten interviewed R.R. at the LeFlore County Advocacy Center. VanKooten has experience providing child welfare services and is a trained child forensic interviewer. When conducting interviews, VanKooten uses a neutral fact-finding technique in

1

which leading questions are largely avoided.

When interviewed, R.R. was seven years of age. R.R. disclosed events where his dad woke him during the night and touched his "bad spot", "NeeNee" or "Jingle Bell" with his hands. R.R. also told of his dad making him touch his dad's penis with his hands and mouth. R.R. provided specific descriptions of how his dad's penis felt, the carpet afterwards, and also demonstrated during the interview - how his dad had him squat down before his dad placed his dad's penis on R.R.'s "butt". R.R. stated his dad told him not to tell anyone and to keep the incident a secret. He added he was asked by his dad to do "it" again, to which he responded, "No." During the interview, R.R. also described another incident in which his dad placed a disc into the tv and made him watch a video "where there were people learning how to do the things his father had made him do."

## II.   ARGUMENT

**A.   Under Fed. R. Evid. 807, statements made by minor victim R.R. to Tracy VanKooten about the sexual abuse inflicted upon him by the defendant are properly admissible.**

Rule 807 of the Federal Rules of Evidence provides in pertinent part:

**(a) In General.** Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
   **(1)** the statement is supported by sufficient guarantees of trustworthiness-- after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
   **(2)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

The Tenth Circuit noted that a leading authority in the area recognizes that "'courts regularly employ the residual [Fed. R. Evid. 807] exception in child abuse litigation.'" *United States v. Harrison*, 296 F.3d 994, 1004 (10th Cir. 2002) (citation omitted). This is so, even though the residual exception is only applicable in exceptional circumstances. Under Fed. R. Evid. 807

"exceptional circumstances generally exist when a child sexual abuse victim relates the details of the abusive events to an adult." *United States v. Peneaux*, 432 F.3d 882, 893 (8th Cir. 2005).[1] Rule 807's linchpin is its requirement that the statements sought to be admitted have "'circumstantial guarantees of trustworthiness' equivalent to those in Rule 803 or 804." *United States v. Harrison,* 296 F.3d at 1006. There is no scientific formula for determining "whether a statement has 'circumstantial guarantees of trustworthiness.'" This task lies within the sound discretion of the trial judge. *Id.*

### i. R.R.'s out-of-court statements are supported by sufficient guarantees of trustworthiness.

In *United States v. Harrison,* a child victim made several out-of-court statements accusing her mother's common-law husband of sexually abusing her (the child victim). The child victim recanted and testified as a defense witness at trial. After the child victim's recantation, the government, primarily relying on Fed. R. Evid. 807, introduced statements made by the child victim to both a Navajo Tribal Police officer and an FBI agent. These statements inculpated the defendant. The defendant was convicted and appealed. On appeal, the defendant argued, among other things, that the child victim's out-of-court statements were inadmissible hearsay. The Tenth Circuit affirmed Harrison's conviction. In reaching its conclusion, the Tenth Circuit evaluated several factors in determining whether the district court abused its discretion in determining that the child victim's out-of-court statements had circumstantial guarantees of trustworthiness, and thus were properly admitted under Fed. R. Evid. 807. These factors included, among other things:

---

[1] In enacting OK STT. 12 § 2803.1, the Oklahoma State legislature implicitly recognized the exceptional nature of out-of-court child sexual abuse victim statements. The statute provides that under certain circumstances prior statements disclosing sexual abuse made by a child victim under 13 years of age are admissible provided there are sufficient indicia of reliability. In making the determination of whether sufficient indicia of reliability exists, the statute specifically provides that the court can consider among other things "the spontaneity and consistent repetition of the statement, the mental state of the declarant, whether the terminology used is unexpected of a child of similar age or of an incapacitated person, and whether a lack of motive to fabricate exists...."

1) the circumstances under which the statements were made; 2) the consistency of the declarant's various statements; 3) the specificity and peculiarity of the statements; 4) the time between the alleged events in the out-of-court statements; and 5) the declarant's motive, if any, to lie. *Id.* at 1002-07.

In this case, R.R.'s out-of-court statements disclosing the defendant's perpetration of sexual abuse was inadvertent, as R.R. had not disclosed the sexual abuse to any person prior to that interview. R.R. was being interviewed as a result of an allegation relating to possible exposure to adult sexuality, not acts of child sexual abuse. During the interview, R.R. was initially reticent to disclose the full extent of the sexual contact and became visibly upset at times. R.R. described how his dad's penis felt wet, told of the carpet being wet afterwards and having a stain that his dad did not clean. These were all appropriate descriptions for a seven-year-old's vocabulary. R.R. was descriptive of the room, the type of bed and where these events occurred. R.R. described the events as having occurred after his mother died (in December of 2017) and when they were staying at his grandpa's house. There is no evidence of animus between R.R. and the defendant. Thus, R.R. had no motive to lie. Finally, the events that R.R. described in his out-of-court statements are of a type that are ordinarily beyond his then seven-year-old life experiences. His descriptions of abuse militate in favor of them having been lived.

> **ii. R.R.'s out-of-court statements are more probative on the point for which they are being offered than any other evidence that the government can obtain through reasonable efforts.**

Because of R.R.'s age at the time of the defendant's sexual abuse, and the minimum of two years between the time that the defendant last abused him and the time that he will testify at trial, his out-of-court statements are more probative of the defendant's conduct than any other evidence. His narration of victimization in his out-of-court statements will be more accurate than

4

his temporally distant courtroom testimony. This is because, among other things, while two years is a relatively short time in adult experience, it may be remarkably long to a seven-year-old who is now nine. This is especially true when the nine-year-old will be forced to narrate traumatic events in a room of adult strangers, that he was hesitant even to disclose to Ms. VanKooten. When there is reason to believe that a child sexual abuse victim will be unable to sufficiently articulate the details of a traumatic event even though he will testify at trial, his prior statements to adults about the sexual abuse, in the court's discretion, are admissible as more probative. *See United States v. W.B.,* 452 F.3d 1002, 1006 (8th Cir. 2006) (child sexual abuse victim's prior statements more probative than victim's trial testimony and properly admissible, when victim's testimony is inconsistent or victim is unable to testify clearly regarding details of the abuse).

### iii. R.R.'s out-of-court statements are offered to prove a material fact.[2]

R.R.'s out-of-court statements are relevant to material issues in this case. They are being offered to prove the child sexual abuse charged in Counts One, Two and Three of the indictment.

### iv. Admission of R.R.'s out-of-court statements serves both the best purposes of the Rules of Evidence and the interests justice.

In determining the defendant's guilt or innocence the finder of fact should have access to the most reliable evidence available to the parties. This is especially true here, a case in which the government's primary witness is a child who was the victim of sexual abuse. For the reasons stated

---

[2] Prior to being clarified by amendment in 2019, Fed. R. Evid. 807 provided in pertinent part as follows:
  **(a) In General.** Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
    **(1)** the statement has equivalent circumstantial guarantees of trustworthiness;
    **(2)** it is offered as evidence of material fact;
    **(3)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable effort; and
    **(4)** admitting it will best serve the purposes of these rules and the interest of justice.
Although subsections (2) and (4) above are no longer in the rule, arguably as a general proposition, considerations raised by them remain relevant in a court's assessment of whether evidence should be admitted. For this reason, the government has addressed the issues raised in these two subsections.

above in this memorandum, the out-of-court statements that the government seeks to introduce are reliable. They plainly fall within the purview of the purposes of the Federal Rules of Evidence, that is to assure that the parties provide reliable evidence to the finder of fact. Assuring that the finder of fact receives reliable information from a child witness for its consideration, is in the interest of justice. It will aid the finder of fact in its search for the truth. Both parties should be active participants in this search. The defendant will have the opportunity to test the credibility of the government's evidence. The government anticipates that Ms. VanKooten will testify at trial. She will sponsor admission of the forensic interview, testify to the substance of R.R.'s disclosures to her and the circumstances surrounding his disclosures. The government anticipates that Ms. VanKooten will be searchingly cross-examined and the trier of fact will be able to determine whether their testimony, and R.R.'s out-of-court statements, are credible. Moreover, the government anticipates that R.R. will testify at trial. He undoubtedly will be searchingly cross-examined, not only on his testimony at trial, but also about his out-of-court statements. The fact that R.R. will testify at trial "'vitiates the main concern of the hearsay rule.'" *United States v. Peneaux*, 432 F.3d at 892. His appearance at trial also eliminates any potential confrontation clause issue. *See United States v. Chaco*, 801 F.Supp.2d 1200, 1213-14 (D.N.M. 2011).

WHEREFORE, the government respectfully requests that its First Motion i*n Limine* be granted, and that it be allowed to introduce R.R.'s out of-court statements for the truth of the matters asserted therein.

Respectfully submitted,

CHRISTOPHER J. WILSON
Acting United States Attorney

s/Edith A. Singer
EDITH A. SINGER
OBA#19439
Assistant United States Attorney
520 Denison Avenue
Muskogee, OK 74401
(918) 684-5100
E-mail: Edith.Singer@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Michael Brewer, Attorney for Defendant

s/Edith A. Singer
EDITH A. SINGER