**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-CR-180-DCJ |
| | ) | |
| **ROY LEE ROBERTS, JR.,** | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO SEVER**

OFFICE OF THE FEDERAL PUBLIC DEFENDER
Julia L. O'Connell, Interim Federal Public Defender

Barbara L. Woltz, OBA No. 12535
Research and Writing Specialist
Barbara_L_Woltz@fd.org
Michael S. Brewer, OBA No. 34233
Assistant Federal Public Defender
627 W. Broadway
Muskogee, Oklahoma 74401
Telephone:  (918) 687-2430

Counsel for the Defendant

Dated March 16, 2022

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES  …………………………………………  iii-iv

FACTUAL BACKGROUND  …………………………………………..……..  1

      INDICTMENT AND SUPERSEDING INDICTMENT  …………………….  3

      FORENSIC INTERVIEWS OF R.R. AND A.R.  …………………………..  4

      FORENSIC INTERVIEW OF C.R.  ………………………………………..  5

ARGUMENT AND AUTHORITIES  …………………………………………..  8

I.     THE ADDITION OF COUNT FOUR WITH COUNTS
       ONE, TWO, AND THREE WAS PREJUDICIAL
       MISJOINDER  ………….…………………………………..………….  8

II.    THE JOINDER OF COUNT FOUR WOULD VIOLATE
       MR. ROBERTS' FIFTH AMENDMENT RIGHT TO A
       FAIR TRIAL  ………………….…………………………………………….  12

III.   RULE 414 SHOULD NOT PREVENT THE SEVERANCE
       OF COUNT FOUR FROM COUNTS ONE, TWO, AND
       THREE  …………………………………………………………..………  14

      A.    Threshold Requirements  …………………………………………  15

      B.    Preliminary Finding  ………………………………….………..  16

      C.    First *Enjady* Factor …………………………………………….  16

      D.    Second *Enjady* Factor and Five Subfactors ………………….………..  16

      E.    Third and Fourth *Enjady* Factors  …………………………………  18

      F.    Analysis of Three "Probative Dangers"  ………………….………..  18

      G.    Rule 403 Balancing  …………………………….………………  18

      H.    The Framework  …………………………………….………..  20

      I.    Evidentiary Hearing and Detailed Findings Are Required  ………..……..  20

CONCLUSION  …………………………………………………………………….   21

CERTIFICATE OF SERVICE  …………………………………………………….…..   22

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Old Chief v. United States*, 519 U.S. 172 (1997) ……………………………………   13, 19

*United States v. Begay*, 2009 WL 301828 (10th Cir.)
    (unpublished) …………………………………………………………………   19-20

*United States v. Benally*, 500 F.3d 1085 (10th Cir. 2007) ……………………………..   15-18, 20

*United States v. Biswell*, 700 F.2d 1310 (10th Cir. 1983) ……………………………   13

*United States v. Butler*, 494 F.2d 1246 (10th Cir. 1974) ……………………………   13

*United States v. Chavis*, 296 F.3d 450 (6th Cir. 2002) ………………………………   10

*United States v. Enjady*, 134 F.3d 1427 (10th Cir. 1998) ……………………………   16-18

*United States v. Grigsby*, 272 F. App'x 738 (10th Cir. 2008)
    (unpublished) …………………………………………………………………..   19, 20-21

*United States v. Guardia*, 135 F.3d 1326 (10th Cir. 1998) ………………………….   17, 19

*United States v. Hill*, 2014 WL 3767075 (N.D. Cal. July 24, 2014) ………………..   11

*United States v. Isabella*, 918 F.3d 816 (10th Cir. 2019) ………………………….   13

*United States v. Lane*, 474 U.S. 438 (1986) …………………………………………..   10, 12

*United States v. Magnan*, 756 F. App'x 807 (10th Cir. 2018)
    (unpublished) ………………………………………………………………..   19

*United States v. Mann*, 701 F.3d 274 (8th Cir. 2012) …………………………………   10

*United States v. Mercer*, 653 F. App'x 622 (10th Cir. 2016)
    (unpublished) ………………………………………………………………   19-20

*United States v. Perrault*, 995 F.3d 748 (10th Cir.),
    *cert. denied*, 142 S. Ct. 472 (2021) ……………………………………………….   19

*United States v. Richardson*, 161 F.3d 728 (D.C. Cir. 1998) ………………………...   10

*United States v. Singh*, 261 F.3d 530 (5th Cir. 2001) …………………………………   10

*United States v. Velarde*, 214 F.3d 1204 (10th Cir. 2000) …………………………….   19

*United States v. Wetsch*, 2013 WL 1490222 (D. Minn. April 10, 2013) ………………   13-14

**Federal Statutes**

18 U.S.C. § 922(g) …………………………………………………………….   10

18 U.S.C. § 2241(c) …………………………………………………………..   17

18 U.S.C. § 2246(2) …………………………………………………………….   17


**Federal Rules of Evidence**

Rule 403 …………………………………………...………………………   18-19, 21

Rule 413 ……………………………………………………………………   16, 19

Rule 414 …………………………………………………………………...…   13-21


**Federal Rules of Criminal Procedure**

Rule 8 …………………………...……………………………………   1, 8, 10-13

Rule 12(b)(3)(B)(iv) …………………………………………………………   1, 8

Rule 14(a) …………………………………………………………………   1, 8


**Tenth Circuit Rules**

Rule 32.1 ……………………………………………………………………..   19

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-CR-180-DCJ |
| | ) | |
| **ROY LEE ROBERTS, JR.,** | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO SEVER

The Defendant Roy Lee Roberts ("Mr. Roberts"), by and through the undersigned attorney, moves this Court pursuant to Fed. R. Cr. P. 8(a), 12(b)(3)(B)(iv), and 14(a) to sever the trial of a fourth count added in the Superseding Indictment (Doc 58) filed January 25, 2022 from the trial of the three counts of the original Indictment (Doc. 18) filed May 13, 2021.

### FACTUAL BACKGROUND

1.      "C.R." is a child born in 2004 whose father is Mr. Roberts and whose mother is Lindsi Copeland.

2.      "R.R." is a child born in 2012 and "A.R." is a child born in 2014. R.R. and A.R. are biological children of Mr. Roberts and Brittany Roberts.

3.      On December 7, 2017, Brittany Roberts died in a motor vehicle accident when Mr. Roberts was driving and was allegedly intoxicated.

4.      On February 15, 2019, Melanie Henry obtained temporary guardianship of R.R. and A.R., and in April, 2019, she became their foster parent. She later adopted R.R. and A.R.

5.      On September 12, 2019, Mr. Roberts pleaded guilty to manslaughter charges in Pittsburg County. According to the Oklahoma DOC Offender Lookup web site, he has been in DOC custody since September 24, 2019.

2

6.      Apparently in October 2019, Melanie Henry reported to LeFlore County law enforcement that R.R. had reported to her that he had been sexually abused by Mr. Roberts.

7.      On October 30, 2019, R.R. and A.R. were forensically interviewed at the LeFlore County Advocacy Center by a forensic interviewer that is identified in the discovery provided in this case by the government.

8.      On November 4, 2019, C.R. was interviewed by forensic interviewer Sandy Hall at Pittsburg County Abuse Response Efforts, and the interview was video recorded.

9.      On May 1, 2020, a criminal Information was filed in Pittsburg County, Oklahoma alleging two counts of sexual abuse to a child under 12 and one count of showing obscene material to a minor. On May 12, 2021, the Pittsburg County case was dismissed for lack of jurisdiction.

## INDICTMENT AND SUPERSEDING INDICTMENT

10.      The original Indictment was filed May 13, 2021. In the original Indictment, the Government charged Mr. Roberts with three counts of aggravated sexual abuse in Indian Country. All three counts involve alleged sex acts involving R.R., who was a person under the age of 12 during the alleged time period: between or about November 19, 2017 and September 4, 2019.

11.      On January 25, 2022, more than eight months after the original Indictment was filed, the government filed a Superseding Indictment (Doc 58). The Superseding Indictment added Count Four, alleging that Mr. Roberts "did knowingly engage and attempt to engage in a sexual act . . . to wit: contact between the mouth of the defendant and the penis of C.R., a person who had attained the age of 12 years but had not yet attained the age of 16 years" during the alleged time period: between or about June 8, 2016 and December 9, 2017.

## FORENSIC INTERVIEWS OF R.R. AND A.R.

12.     When A.R. was forensically interviewed on October 30, 2019, he made no statements that he had been sexually abused.

13.     When R.R. was forensically interviewed, he made the following statements:

a.     R.R.'s father tried to make R.R. do sexual things. R.R. Forensic Interview at 18:06.

b.     These things happened when his father woke R.R. up when he was sleeping in his bed in his bedroom at night. *Id.* at 29:51. R.R. did not remember what his father said. *Id.* at 30:15.

c.     His father made R.R. touch his father's penis with his hands. *Id.* at 18:27.

d.     His father made R.R. put his mouth on his father's penis. *Id.* at 19:02.

e.     When asked if his father ever put his hands or his mouth on R.R.'s private part, R.R. said yes. *Id.* at 27:20.

f.     His father put his penis near R.R.'s butt, but not inside his butt. *Id.* at 31:25.

g.     These things happened when they were at R.R.'s grandpa's house in Krebs. *Id.* at 19:13. Four people lived at the house: his grandpa, his father (Mr. Roberts), R.R. and A.R. *Id.* at 20:21. His mother was dead. *Id.* at 20:25.

h.     There was only one time that R.R.'s father did these things. *Id.* at 24:35.

i.     These things all happened on the same night, and it was in R.R.'s bedroom. *Id.* at 27:26.

j.     A.R. was in the bed, which was big. *Id.* at 27:55-28:40. A.R. was asleep and did not wake up. *Id.*

k.     When his father did those things, his grandpa was asleep. *Id.* at 24:30.

l.     When these things happened, R.R. was 6 years old. *Id.* at 20:05.

m.      The next time his father asked him, R.R. said no. *Id.* at 25:38-25:57.

n.      R.R. pointed to testicles on the anatomical diagram and said that body part of his father had hair. *Id.* at 26:00.

o.      When asked if anything came out of his father's penis, R.R. said that "something got wet in the floor." *Id.* at 25:07.

p.      When asked about the "something wet" and the floor, R.R. said it came from his father's penis, and it was in the carpet. *Id.* at 29:08. His father just left it there. *Id.* at 29:20.

q.      R.R.'s father would tell R.R. not to tell anybody. *Id.* at 22:38.

r.      R.R. never saw his father do anything like that to A.R. *Id.* at 23:44.

s.      His father put a disk into the TV that had people "doing that stuff," and he made R.R. watch. *Id.* at 35:18.

t.      One night, R.R. wanted to get a drink, and when he went into the living room, he saw his mother and C.R. on a mattress doing the "thing I did with my dad." *Id.* at 41:14. His mother and C.R. saw R.R., but "kept on doing it." *Id.* at 42:42.

u.      When this happened, another sibling was asleep on the top bunk, and R.R. and A.R. slept on the bottom bunk. *Id.* at 42:56.

**FORENSIC INTERVIEW OF C.R.**

14.     When C.R. was forensically interviewed, he made the following statements:

a.      When asked what he knew "about being here today," C.R. said "Only suppose to talk about what happened which I'm ready for." C.R. Forensic Interview at 9:28.

b.      C.R. said that he had "dropped out" of high school during his freshman year, but was intending to go back to school. *Id.* at 4:48.

c.      While he was out of school, he sold "weed." *Id.* at 4:56.

d. C.R. did "all kinds" of drugs, such as dope, coke, acid, and "all of it." *Id.* at 5:13

e. He was not doing drugs at the time of the interview, because he had been to Cedar Ridge and had just gotten out 4 days before the interview. *Id.* at 5:25. He had originally gone to Cedar Ridge because he "had a bad trip on acid" that included vivid hallucinations and delusions. *Id.* at 5:45-7:32.

f. Six months before the interview, C.R. had been at Cedar Ridge for about 9 days before moving to Red River in Norman for about 18 days. *Id.* at 7:32. He had claimed to be suicidal after having stolen "a bunch of liquor bottles." *Id.*

g. He lived with his mother, Lindsi Copeland; his brother, Jordan, age 11; and his sister, Ashtyn, age 17. *Id.* at 8:06.

h. C.R. said that when he was about 4 years old, his father, Mr. Roberts, was at their home in Krebs, which was C.R.'s great-grandmother's house. His father showed him pornography and told him to "go play with myself." *Id.* at 9:43.

i. When C.R. was in second grade, his father gave him "a bunch of nudie books and some lotion." *Id*. "[H]e never touched me or tried to." *Id.* at 10:22.

j. When C.R. had just turned 13, he was at the house in Krebs with his stepmother, Brittany Roberts, and his father "was gone trucking." *Id.* at 10:39. C.R. and Brittany Roberts "got really drunk and ended up having sex and it happened a lot more." *Id.* at 10:48.

k. Mr. Roberts "freaked out" when he found out that C.R. and Brittany Roberts were having sex. *Id.* at 11:11. C.R. "suggested we just have threesome just so he wouldn't be mad." *Id.* at 11:14. The 3 of them continued sex acts and smoked marijuana. *Id.* at 11:22. C.R. said that his father "tried to suck my dick." *Id.* C.R. "started freaking out" and said "hell no, that's weird." *Id.* at 11:36.

6

l.     After the time of the threesome with his father and Brittany Roberts, C.R. and Brittany Roberts continued to have sex "behind his back." *Id.* at 15:20-15:56. C.R. also said that Brittany Roberts "gave me head all of the time." *Id.* at 17:02.

m.     C.R.'s father shot his friend, Chris Jones, who was 16 years old, in the arm when the 3 of them were in New Mexico. *Id.* at 12:11. The 3 of them were in his father's semi, and C.R. was sleeping in the sleeper compartment. *Id.* at 12:44. The shooting was supposed to have been an accident, and Chris told people that he had shot himself. *Id.* at 13:38. C.R. had previously defended his father, but now thought that he "was probably going to shoot [Chris] in the head." *Id.* at 12:54. He said that his father had put the gun to C.R.'s head that same night. *Id.* at 12:57.

n.     C.R. also thought that the vehicle accident when Brittany Roberts died was probably an intentional attempt by Mr. Roberts to kill Brittany Roberts. *Id.* at 14:20. C.R. thought that maybe Mr. Roberts was crying "not because she was dead [but] because he was still alive." *Id.* at 14:49.

o.     C.R. also thought the vehicle accident may have involved a written journal that Brittany kept. *Id.* at 14:28. C.R. saw his father with a "big file thing with all kinds of papers and he always had it in his trunk." *Id.* at 16:10. C.R. guessed "some of it was probably hers [Brittany Roberts']." *Id.* at 16:40.

p.     C.R. said that he thought he remembered that Brittany Roberts told him "a bunch of weird stuff" about his father and sex. *Id*. at 20:16.

q.     C.R. "found out he [his father] did stuff to like my little brothers now I want to kill him." *Id*. at 12:03. His little brothers "said something to their counselor." *Id*. at 18:35.

r.      C.R. said that his father is "a piece of shit. I hope he burns in hell and rots in prison."

*Id*. at 17:48. C.R. said that if Mr. Roberts ever gets out of prison, "I'm going to shoot him. I'm

going to kill him if he ever gets out so they might as well lock him up forever." *Id*. at 17:53.

## ARGUMENT AND AUTHORITIES

## I.      THE ADDITION OF COUNT FOUR WITH COUNTS ONE, TWO, AND THREE WAS PREJUDICIAL MISJOINDER

Rule 12(b)(3)(B)(iv) states that a motion for improper joinder must be made before trial.

Rule 8(a) explains when offenses can be combined in the same indictment:

> **(a) Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Cr. P. 8(a). Rule 14 is entitled "Relief from Prejudicial Joinder," and subparagraph (a)

explains when a district court may provide relief:

> **(a) Relief.** If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Cr. P. 14(a).

This Court, in considering these applicable rules, should sever Count Four from the first

three counts that were brought pursuant to the original Indictment. Count Four is not of the same

character as the allegations of Counts One, Two, or Three. Count Four is not "based on the same

act or transaction," as Counts One, Two, and Three, and Count Four is not part "of a common

scheme or plan." Each incident is claimed by the applicable child, R.R. or C.R., to have been the

only sexual contact incident involving Mr. Roberts. R.R. and C.R. are both biological sons of Mr.

Roberts. Those are the only similarities.

The different character of the incident alleged in Counts One, Two, and Three from the incident alleged in Count Four can be seen in this table comparing the allegations:

| Allegation | **C.R.**<br>Incident Alleged In **C.R.**'s Forensic Interview | **R.R.**<br>Incident Alleged in **R.R.**'s Forensic Interview |
|---|---|---|
| Time Frame (per the child) | Summer of 2017 (C.R. had just turned 13 years old) | August 2018-August 2019 (R.R. was 6 years old) |
| Time Frame (per Indictment) | June 8, 2016 to December 9, 2017 | November 19, 2017 to September 4, 2019 |
| Time of Day | Unspecified | Apparently middle of the night; R.R. had been asleep and was awakened by Mr. Roberts; both A.R. and their grandfather were asleep |
| Brittany Roberts (died December 9, 2017) | Was involved in incident | Was deceased at time of incident |
| Location of house | "The house in Krebs"; otherwise unspecified | R.R.'s grandfather's house in Krebs |
| Location within house | Unspecified | R.R.'s bedroom |
| Age of child at time of incident | 13 years old | 6 years old |
| Sexual Act | No completed act. Mr. Roberts allegedly "tried" to give oral sex to C.R., but stopped when C.R. objected | Mr. Roberts made R.R. touch his penis with his hands and with his mouth. Mr. Roberts may have put his hands or mouth on R.R.'s penis. |
| Other people | "Threesome" of Mr. Roberts, C.R., and Brittany Roberts;<br><br>Others in house and location within house unspecified | No other people involved in incident;<br><br>A.R. asleep in the bed in the room; grandfather asleep in his room |
| Drugs and alcohol | Marijuana mentioned in the one incident involving Mr. Roberts; Both alcohol and marijuana mentioned in connection with multiple sex acts between C.R. and Brittany Roberts. | No mention of drugs or alcohol |

9

Whether joinder complies with Rule 8 is determined by the allegations of the indictment. *See United States v. Lane*, 474 U.S. 438, 447 (1986) ("once the Rule 8 requirements were met by the allegations in the indictment, severance thereafter is controlled entirely by Federal Rule of Criminal Procedure 14, which requires a showing of prejudice"). *See also United States v. Chavis*, 296 F.3d 450, 456-57 (6th Cir. 2002) (whether joinder is proper under Rule 8(a) "is determined by the allegations on the face of the indictment"). While Rule 8 should be construed in favor of joinder, "failure to meet the requirements [of Rule 8] constitutes misjoinder as a matter of law" and the district court has no discretion on the question of severance. *Id.* In *Chavis*, the Sixth Circuit held that the indictment had provided insufficient allegations that possession of cocaine base was part of the "same act or transaction" as the purchase of a handgun two years earlier. *Id.* at 458.

In a D.C. Circuit case, the defendant argued that there was a misjoinder when the indictment alleged a charge pursuant to the D.C. Code combined with federal offenses of firearm and ammunition possession pursuant to 18 U.S.C. § 922(g). *United States v. Richardson*, 161 F.3d 728, 730 (D.C. Cir. 1998). The charges arose from events on the same date. *Id.* The court noted that Rule 8 was generally construed liberally in favor of joinder, but said that "joinder under Rule 8 is not infinitely malleable: it cannot be stretched to cover offenses, like those here, which are discrete and dissimilar and which do not constitute parts of a common scheme or plan." *Id.* at 733. *See also United States v. Mann*, 701 F.3d 274, 290 (8th Cir. 2012) (counts charging the defendant with a bombing plot were not properly joined with counts alleging illegal possession of other weapons, where the government failed to allege a connection between the other weapons and the 1bomb plot); *United States v. Singh*, 261 F.3d 530, 533-34 (5th Cir. 2001) (reversal necessary when possession of firearm by a convicted felon charge was misjoined with other unrelated charges and the denial of the defense motion for severance constituted an abuse of discretion).

Against this legal backdrop, it is evident that the government has misjoined the original three counts in the Indictment and Count Four from the Superseding Indictment. The government has not alleged in the Superseding Indictment that any of the requirements of Rule 8(a) have been met. The charges are not alleged to be (1) "of the same or similar character," (2) "based on the same act or transaction," or (3) "connected with or constitute parts of a common scheme or plan." Fed. R. Cr. P. 8(a). In addition to the government's failure to establish any of the requirements of Rule 8(a), the face of the allegations in the Superseding Indictment shows that the two alleged incidents happened in different time frames. The facial allegations show that the requirements of Rule 8(a) are not met and therefore this Court should not allow the joinder of the unrelated Count Four with Counts One, Two, and Three.

In *United States v. Hill*, 2014 WL 3767075 (N.D. Cal. July 24, 2014), the government sought to join two original counts of felon in possession of firearm and obstruction with two counts of armed robbery added in a superseding indictment. The government claimed that the two sets of charges were "of the same or similar character," but the district court rejected that claim, noting that the two events happened more than five months apart. *Id.* at *2. The district court said that "vague, thematic similarity is insufficient to support joinder of these charges" and granted the defendant's motion to sever. *Id.* This Court should grant severance in Mr. Roberts' case because the Superseding Indictment does not meet the requirements for joinder under Rule 8(a) and "vague, thematic similarity" of the two sets of allegations which demonstrably happened at different times is insufficient to support joinder.

## II.     THE JOINDER OF COUNT FOUR WOULD VIOLATE MR. ROBERTS' FIFTH AMENDMENT RIGHT TO A FAIR TRIAL

The government has committed misjoinder by attempting to join four allegations from two separate, unrelated allegations into one trial. However, even if the Court were to find that Rule 8(a) is satisfied by the language of the Superseding Indictment, combining the counts into one trial would violate Mr. Roberts' Fifth Amendment right to a fair trial.

> Improper joinder does not, in itself violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial.

*Lane*, 474 U.S. at 446 n. 8.

The facts outlined above from the forensic interviews of R.R. and C.R. reflect the distinctions between the two sets of allegations and show that having one trial for all four counts would be so prejudicial to Mr. Roberts as to affect his right to a fair trial. The original allegations were that on one occasion Mr. Roberts committed sexual abuse against a 6-year-old boy. These allegations, while serious, are relatively straight-forward and involve one incident that allegedly happened in 2018 or 2019. The trial would not be especially complex or involve a large number of witnesses.

In contrast, the second set of allegations involve one occasion of a bizarre "threesome" involving Mr. Roberts' 13-year-old son that did not result in a completed sexual act between Mr. Roberts and C.R. The second set of allegations is not straight-forward, and it involves consensual sex[1] between C.R. and Brittany Roberts on multiple occasions that obviously had to have occurred before Ms. Roberts died on December 9, 2017. It involves drug and alcohol use, and it necessarily

---

[1]     The Defense is not suggesting that sexual acts between Brittany Roberts and C.R. were not criminal; however, C.R.'s forensic interview made it clear that, while he was 13 years old and obviously below the age of consent, he was a willing participant in the sexual acts with Brittany Roberts.

would involve cross-examination of C.R. regarding his drug use and his mental health, including his experiences of delusions and hallucinations. Instead of a short trial regarding one incident that would be the result of R.R.'s allegations, a trial of C.R.'s allegations could be much longer and could involve more witnesses. The bizarre nature of C.R.'s set of allegations would cause unfair prejudice to Mr. Roberts' ability to have a fair trial regarding the first set of allegations.

The government's strategy in combining these two unrelated events into one indictment is clear: the combined trial would prejudice Mr. Roberts without the trouble of filing a notice pursuant to Rule 414 of the Federal Rules of Evidence and satisfying all of the requirements of Rule 414. *See Old Chief v. United States*, 519 U.S. 172, 180-81 (1997) (unfairly prejudicial evidence suggests that the jury should convict the defendant "for crimes other than those charged - or that, uncertain of guilt, [the jury should] convict anyway because a bad person deserves punishment"); *United States v. Isabella*, 918 F.3d 816, 837 (10th Cir. 2019), *quoting Old Chief*, 519 U.S. at 180; *United States v. Biswell*, 700 F.2d 1310, 1318-19 (10th Cir. 1983) (improper admission of evidence of a prior crime "constitutes plain error impinging upon the fundamental fairness of the trial itself") (additional citations omitted).

When joinder of offenses "causes the actual or threatened deprivation of a fair trial, severance is no longer discretionary." *United States v. Butler*, 494 F.2d 1246, 1256 (10th Cir. 1974). In *United States v. Wetsch*, 2013 WL 1490222 *3 (D. Minn. April 10, 2013), the district court found that thirteen counts of armed robbery were properly joined pursuant to Rule 8(a) because they were for the same crime (robbery), and the perpetrator was "alleged to have worn dark clothing and used a similar revolver-style gun" in all thirteen robberies. Although joinder was proper, the district court agreed with a magistrate's recommendation to divide the thirteen counts into three separate trials. *Id.* at *5. The magistrate was concerned that the defendant's admission

to having committed one of the robberies could "potentially spill over and contaminate the trial on the other twelve counts." *Id.* at *4. The district court ordered three separate trials to avoid prejudice to the defendant, including the jury's inability "to compartmentalize the evidence" among the counts. *Id.* at *5.

In Mr. Roberts' case, the government's choice to combine two unrelated sets of allegations in the Superseding Indictment will deprive him of a fair trial. *Butler*, 494 F.2d at 1256. The evidence regarding the bizarre "threesome" alleged by C.R. will spill over and contaminate a fair trial of the allegations of R.R. It is impossible to believe that a jury would be able "to compartmentalize the evidence" of C.R. regarding a "threesome" from the evidence of R.R. *Wetsch*, 2013 WL 1490222 at *5. This Court should grant this Motion and order that there will first be one jury trial regarding Counts One, Two, and Three; and then a second trial regarding Count Four. Only two separate trials would be consistent with Mr. Roberts' constitutional right to a fair trial.

## III.   RULE 414 SHOULD NOT PREVENT THE SEVERANCE OF COUNT FOUR FROM COUNTS ONE, TWO, AND THREE

The defense anticipates that the government will assert that severance is unnecessary because evidence of the two alleged incidents would be admissible in the separate trial of the other incident pursuant to Rule 414, Federal Rules of Evidence. The defense asks that this Court reject any such argument regarding Rule 414 posited by the government. Because Rule 414 does not require that the evidence of the two sets of allegations should be admitted in the trial of the other set, this Court should sever Count Four from Counts One, Two, and Three.

In analyzing whether the government would be able to introduce the separate alleged incidents in the trial of the other pursuant to Rule 414, this Court must follow a specific Framework. Rule 414(a) is the relevant provision for this Court to consider:

(a) Permitted Uses. In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant.

Fed. R. Evid. 414(a).

A.    Threshold Requirements

The Tenth Circuit requires that the requested evidence "must meet three threshold requirements before it may be considered for admission. The district court must determine":

(1) the defendant is accused of a crime involving sexual assault or child molestation[;]

(2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation[;] and

(3) the evidence is relevant.

*United States v. Benally*, 500 F.3d 1085, 1090 (10th Cir. 2007).

In the present case, these threshold requirements are not clearly satisfied. While Counts One, Two, and Three allege criminal sexual acts against R.R., the evidence regarding Count Four is not so clear. In his forensic interview, C.R. only says that his father "tried to suck my dick." C.R. Forensic Interview at 9:43. It is therefore unclear if the second threshold requirement is met by the allegation involving C.R. Regarding the third threshold requirement, it is questionable whether the strange one-time incident alleged by C.R. has any relevance to the allegations that Mr. Roberts molested a 6-year-old child. It is usually found that one incident shows a defendant's propensity to seek out sex with young children; however, it does not appear that Mr. Roberts sought any sexual act with his 13-year-old son in the allegations of Count Four. Instead, it appears that he literally walked in on his son having sex with his wife, and then joined in their sexual behavior. This does not clearly have relevance to whether Mr. Roberts was predisposed to molest young children. Rule 414 does not clearly apply given the stark contrast of the two alleged incidents.

15

B.   Preliminary Finding

In addition to these three threshold requirements, if the government "seeks to introduce [Rule 413 or Rule 414] evidence, the district court must make a preliminary finding that a jury could reasonably find that the 'other act' occurred by a preponderance of the evidence." *Benally*, 500 F.3d at 1090.

C.   First *Enjady* Factor

A district court can proceed in its analysis only after a district court has found all three threshold requirements and the preliminary finding that a jury could find the "other act" by a preponderance of the evidence. *Benally*, 500 F.3d at 1090. According to *Benally*, "the district court should then consider" four factors that the *Benally* court called the *Enjady* factors, citing *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998). The first *Enjady* factor is:

1) how clearly the prior act has been proved;

*Benally*, 500 F.3d at 1090. In the present case, the allegations of R.R. and C.R. both pose questions regarding how clearly the allegations have been proved and therefore whether the preliminary finding and the first *Enjady* factor weigh against or in favor of allowing one incident to be admitted into evidence at the jury trial of the other incident.

D.   Second *Enjady* Factor and Five Subfactors

The second *Enjady* factor is:

2) how probative the evidence is of the material fact it is admitted to prove;

*Benally*, 500 F.3d at 1090. *Benally* then set forth five subfactors "[t]o further assist district courts in analyzing probativeness under the second *Enjady* factor":

1) the similarity of the prior acts and the charged acts[;]

2) the time lapse between the other acts and the charged acts[;]

> 3) the frequency of the prior acts[;]
>
> 4) the occurrence of intervening events[;] and
>
> 5) the need for evidence beyond the defendant's and alleged victim's testimony.

*Benally*, 500 F.3d at 1090, citing *United States v. Guardia*, 135 F.3d 1326, 1331 (10th Cir. 1998).

In the present case, the second *Enjady* factor weighs against allowing the two incidents to be admitted as Rule 414 evidence in the trial of the other due to their dissimilarity and the other subfactors. While neither forensic interview is completely clear on exactly what happened, R.R.'s allegations appear to involve "sexual acts" as defined in 18 U.S.C. § 2246(2) that could then be the basis of a conviction for aggravated sexual abuse in violation of 18 U.S.C. § 2241(c). As stated above, the incident that C.R. alleges is dissimilar to what R.R. alleges. C.R.'s allegation involves a 13-year-old boy who was engaging in multiple sexual acts with Brittany Roberts whereas R.R. alleges that he was a 6-year-old boy who was awakened by his father who then molested him. C.R. was 13 compared with R.R. being 6. C.R.'s allegations almost certainly happened in 2017 and certainly could not have happened after Brittany Roberts died on December 9, 2017. R.R. alleges that the incident involving him happened after Brittany Roberts died and when R.R. was 6 years old. This requires the incident to have been sometime between August 2018 to August 2019, about a year after the incident involving C.R. in 2017. The "frequency" subfactor also weighs against applying Rule 414 because C.R. is clear that this happened only once and implies that it was an unintended accidental encounter by all three participants in the threesome. Brittany Roberts' death is an intervening event (subfactor 4) that changes the status of all of the members of this family. C.R.'s drug use, alcohol use, and dropping out of high school could also be intervening events.

E.    Third and Fourth *Enjady* Factors

The third and fourth *Enjady* factors are:

3) how seriously disputed the material fact is; and

4) whether the government can avail itself of any less prejudicial evidence.

*Benally*, 500 F.3d at 1090. The third and fourth *Enjady* factors do not require this Court to allow the two sets of allegations to be admitted in the trial of the other pursuant to Rule 414.

F.    Analysis of Three "Probative Dangers"

A trial court has more inquiries to make at this point. To get to these additional inquiries, the trial court must have found that the proposed evidence has met all three threshold requirements; the preliminary finding that a jury could find the "other act" by a preponderance of the evidence; and that the four *Enjady* factors (including the five subfactors to the second *Enjady* factor) weigh in favor of admitting the evidence. *Benally*, 500 F.3d at 1090. The "probative dangers" must then be considered:

1)    how likely it is such evidence will contribute to an improperly-based jury verdict;

2)    the extent to which such evidence will distract the jury from the central issues of the trial; and

3)    how time consuming it will be to prove the prior conduct.

*Benally*, 500 F.3d at 1090-1092.

G.    Rule 403 Balancing

In addition to the enumerated "probative dangers," a traditional balancing of Rule 403 is also required.

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Rule 403, Federal Rules of Evidence. *See United States v. Velarde*, 214 F.3d 1204, 1212 (10th Cir. 2000) (remand was necessary for district court to conduct "the necessary Rule 403 balancing" on the record); *United States v. Magnan*, 756 F. App'x 807, 821 (10th Cir. 2018) (unpublished)[2] (district court's reasoning was "insufficient" when court failed to explicitly consider Rule 403 balancing); *United States v. Begay*, 2009 WL 301828 at *5-6 (10th Cir.) (unpublished) (approving district court's exclusion of evidence under Rule 403); *United States v. Grigsby*, 272 F. App'x 738 (10th Cir. 2008) (unpublished) (approving district court's order of new trial based on Rule 403 analysis).

The three probative dangers and the weighing required by Rule 403 are all strong reasons in the present case to disallow the use of evidence of each incident in the jury trial regarding the other incident. The Tenth Circuit has recognized on numerous occasions that evidence admitted pursuant to the exceptions of Rules 413 and 414 will always, by its nature, be extremely prejudicial to the defendant. *Guardia*, 135 F.3d at 1328-31 (recognizing the "sensitive nature of the balancing test" in Rules 413 and 414); *United States v. Mercer*, 653 F. App'x 622, 629-30 (10th Cir. 2016) (unpublished) ("Rule 414 evidence will almost always have a profound impact on the jury and cause it to feel disgust toward the defendant"); *United States v. Perrault*, 995 F.3d 748, 770 (10th Cir.), *cert. denied*, 142 S. Ct. 472 (2021) (same).

In the present case, R.R.'s allegations of one incident in which his father molested him as a 6-year-old in the middle of the night are serious, and the nature of the allegations will cause disgust to the jury. This is unavoidable given the nature of the allegations. Allowing, however, not only R.R.'s serious allegations, but then C.R.'s testimony regarding a lurid "threesome" when C.R.

---

[2]     Pursuant to Tenth Circuit Rule 32.1, all unpublished cases cited in this pleading are not cited as precedent, but are cited for their persuasive value.

was 13 years old would cause unfair prejudice to Mr. Roberts' defense of R.R.'s claims. It would cause the jury to want to convict Mr. Roberts for reasons unrelated to his possible guilt regarding R.R.'s allegations. *Old Chief v. United States*, 519 U.S. at 180-81. While the prejudice would be great, the probative value would be questionable given the dissimilar nature of the allegations. This Court should find that the dangers substantially outweigh the limited probative value of the allegations. Allowing evidence of both incidents in one trial would distract, confuse, and mislead the jury; it would be unfairly prejudicial to Mr. Roberts and could contribute to an improperly-based jury verdict; and it could contribute to a lengthy trial. *See Begay*, 2009 WL 301828 at *5 (affirming trial court's decision to exclude uncharged conduct with same child victim because the evidence "could overwhelm the trial and overtake the evidence of the crime charged"). This Court should rule against allowing joinder and/or admission of the incidents as Rule 414 evidence.

H.   The Framework

This Court must abide by this Framework in considering the two sets of allegations in the Superseding Indictment. Using this required Framework, this Court should conclude that the government has not met its burden and that each set of allegations should not be mentioned or admitted in the presence of a jury in the trial of the other set.

I.   Evidentiary Hearing and Detailed Findings Are Required

Tenth Circuit cases suggest that a trial court should hold an evidentiary hearing in order to make the detailed findings that are required by the Framework. *Benally*, 500 F.3d at 1088 (district court held evidentiary hearing on allegation that was not subject of previous conviction); *Begay*, 2009 WL 301828 (district court held evidentiary hearing before trial); *Mercer*, 653 F. App'x at 625 (four witnesses who were alleged victims of uncharged conduct testified at pre-trial hearing).

The dangers of failing to have an evidentiary hearing before trial are illustrated by *Grigsby*, 272 F. App'x 738. The unpublished Tenth Circuit decision does not explicitly mention whether the trial court had heard the testimony of the alleged victim before trial. It appears, however, that the district court had ruled based on the government's notice pursuant to Rule 414 and without an evidentiary hearing. At jury trial, the proffered witness alleged that the defendant had sexually abused her on one occasion twenty years earlier. After this witness' testimony, the trial court ordered the jury to disregard the testimony in its entirety. The trial court granted a new trial after balancing the probative value of the disputed testimony with the danger of undue prejudice under Rule 403. *Id.* at 740. The Tenth Circuit affirmed the trial court's balancing and the grant of a new trial. *Id.*

The requirement that this Court must make a clear record with detailed findings supports having an evidentiary hearing, unless the Court finds that the face of the Superseding Indictment shows that the allegations of Count Four are not sufficient to trigger the need for a hearing because they do not satisfy the Framework. This Court can rule now on the facial inadequacy of Counts One, Two, and Three when compared with Count Four based on the arguments made above.

## **CONCLUSION**

For the foregoing reasons, Mr. Roberts respectfully requests that this Court grant this Motion to Sever and rule that there will be separate trials for the one incident described in Counts One, Two, and Three of the Indictment; and for the separate incident described in Count Four. This Court should also rule that neither incident will be admissible in the trial of the allegations of the other incident as Rule 414 evidence. In the alternative, the defense respectfully requests an evidentiary hearing to fulfill this Court's duty regarding the allegations and the making of detailed findings.

Respectfully submitted,

OFFICE OF THE FEDERAL PUBLIC DEFENDER
Julia L. O'Connell, Interim Federal Public Defender

By: s/ Barbara L. Woltz
  Barbara L. Woltz, OBA No. 12535
  Research and Writing Specialist
  Michael S. Brewer, OBA No. 34233
  Assistant Federal Public Defender
  627 W. Broadway
  Muskogee, Oklahoma 74401
  Telephone: (918) 687-2430

  Counsel for the Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to Edith Singer, Assistant United States Attorney, representing the plaintiff.

/s Barbara L. Woltz